# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
**No. 17-236V**
Filed: March 19, 2026

|  |  |
|---|---|
| MATTHEW RODELA and CASANDRA, HOGAN *as Legal Representatives of the Estate of V.S.R.*,<br><br>               Petitioner,<br><br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>               Respondent. | Special Master Horner |

*Curtis R. Webb,* Curtis R. Webb Attorney at Law, Monmouth, OR, for petitioner.
*Tyler King,* U.S. Department of Justice, Washington, DC, for respondent.

### DECISION ON ATTORNEYS' FEES AND COSTS[1]

On February 17, 2017, Matthew Rodela and Casandra Hogan ("petitioners") filed a petition under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioners allege that the Measles, Mumps, Rubella vaccination that V.S.R. received on February 20, 2015, caused her to suffer a Table Injury of encephalitis that ultimately resulted in her death. (ECF No. 1.) On August 8, 2024, Respondent filed a proffer, which I adopted as my decision awarding compensation on November 3, 2025.[3] (ECF No. 144.)

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] I initially entered a decision awarding damages on August 8, 2024, which was subsequently withdrawn on petitioners' motion, and amended to modify the judgement regarding the form of payment. (ECF Nos. 133, 142, 143.)

On November 21, 2019, petitioners filed a motion requesting $174,983.26 in interim attorneys' fees and costs. (ECF No. 73.) Petitioners' motion was granted in part, and they were awarded $173,623.26 in interim attorneys' fees and costs. (ECF No. 77.)

On March 3, 2015, petitioners filed a final motion for attorneys' fees and costs. (ECF No. 139.) ("Fees App.") Petitioners request attorneys' fees and costs in the amount of $472,676.19, representing $283,966.90 in fees and $188,709.29 in costs. Fees App. at 2-3. Petitioners did not indicate that they personally incurred costs in pursuit of this claim. *See* Fees App. On March 18, 2025, respondent filed a response to petitioners' motion. (ECF No. 140.) Respondent argues that "[n]either the Vaccine Act nor Vaccine Rule 13 requires respondent to file a response to a request by a petitioner for an award of attorneys' fees and costs." *Id.* at 1. Respondent adds, however, that he "is satisfied the statutory requirements for an award of attorneys' fees and costs are met in this case." *Id.* at 2. Respondent "respectfully requests that the Court exercise its discretion and determine a reasonable award for attorneys' fees and costs." *Id.* at 5. Petitioner filed a reply on March 18, 2025. (ECF No. 141.)

This matter is now ripe for consideration.

## I.    Reasonable Attorneys' Fees and Costs

The Vaccine Act permits an award of reasonable attorneys' fees and costs. § 15(e). The Federal Circuit has approved the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1347 (Fed. Cir. 2008). This is a two-step process. *Id.* at 1347-48. First, a court determines an "initial estimate . . . by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" *Id.* (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). Second, the court may make an upward or downward departure from the initial calculation of the fee award based on specific findings. *Id.* at 1348.

It is "well within the special master's discretion" to determine the reasonableness of fees. *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521–22 (Fed. Cir. 1993); *see also Hines v. Sec'y of Health & Human Servs.*, 22 Cl. Ct. 750, 753 (1991). ("[T]he reviewing court must grant the special master wide latitude in determining the reasonableness of both attorneys' fees and costs."). Applications for attorneys' fees must include contemporaneous and specific billing records that indicate the work performed and the number of hours spent on said work. *See Savin v. Sec'y of Health & Human Servs.*, 85 Fed. Cl. 313, 316–18 (2008). Such applications, however, should not include hours that are "'excessive, redundant, or otherwise unnecessary.'" *Saxton*, 3 F.3d at 1521 (quoting *Hensley v. Eckhart*, 461 U.S. 424, 434 (1983)).

---

[3] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

Reasonable hourly rates are determined by looking at the "prevailing market rate" in the relevant community. *See Blum*, 465 U.S. at 894-95. The "prevailing market rate" is akin to the rate "in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* at 895, n.11. Petitioners bear the burden of providing adequate evidence to prove that the requested hourly rate is reasonable. *Id.*

Special masters can reduce a fee request *sua sponte*, without providing petitioners notice and opportunity to respond. *See Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 209 (Fed. Cl. 2009). When determining the relevant fee reduction, special masters need not engage in a line-by-line analysis of petitioners' fee application. *Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 729 (Fed. Cl. 2011). Instead, they may rely on their experience with the Vaccine Program to determine the reasonable number of hours expended. *Wasson v. Sec'y of Dep't of Health & Human Servs.*, 24 Cl. Ct. 482, 484 (1991), *rev'd on other grounds and aff'd in relevant part*, 988 F.2d 131 (Fed. Cir. 1993). Just as "[t]rial courts routinely use their prior experience to reduce hourly rates and the number of hours claimed in attorney fee requests . . . Vaccine program special masters are also entitled to use their prior experience in reviewing fee applications." *Saxton*, 3 F.3d at 1521.

### a. Hourly Rates

Petitioners request the following rates of compensation for their attorney, Mr. Curtis Webb: $458.50 per hour for work performed in 2020, $482.00 per hour for work performed in 2021, $497.50 per hour for work performed in 2022, $524.00 per hour for work performed in 2023, $553.50 per hour for work performed in 2024, $553.50 per hour for work performed in 2024 and 2025. Fees App. Att. A. Additionally, for paralegal Alexander Webb, petitioner requests: $165.00 per hour for work performed in 2022, $173.50 per hour for work performed in 2023, and $183.50 per hour for work performed in 2025. These rates are consistent with what Mr. Webb has previously been awarded for his Vaccine Program work and I find them to be reasonable herein. I find that the requested paralegal rates are also reasonable.

### b. Hours Expended

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." *Saxton*, 3 F.3d at 1521. While attorneys may be compensated for non-attorney-level work, the rate must be comparable to what would be paid for a paralegal or secretary. *See O'Neill v. Sec'y of Health & Human Servs.*, No. 08–243V, 2015 WL 2399211, at *9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Clerical and secretarial tasks should not be billed at all, regardless of who performs them. *See, e.g., McCulloch v. Sec'y of Health & Human Servs.,* No. 09-293V, 2015 WL 5634323, at *26 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). Several reductions to the hours billed are necessary.

       i.    *Excessive Billing*

Upon review, I find that a large amount of the time billed in this matter was extremely excessive. Of note, counsel spent approximately 290 hours preparing for the hearing ($132,605.25), which includes 89.6 hours ($37,959.00) spent drafting, editing, and reviewing the pre-hearing brief, and 33.1 hours ($13,840.50) spent drafting, editing, and reviewing petitioners' response to respondent's pre-hearing brief. *See* Fees App. Att. A at 4-13. Counsel also spent 220.9 hours ($101,272.45) on post-hearing briefing, which includes 117.9 hours ($55,786.05) spent drafting, editing, and reviewing the post-hearing brief, and 60.6 hours ($27,092.75) spent drafting, editing, and reviewing petitioners' reply to respondent's response to the post-hearing brief. *See* Fees App. Att. A at 14-19.

In evaluating the reasonableness of billing, the amount of time spent on working on a case must be consistent with counsel's experience and corresponding billing rate. An attorney may not combine relatively high hourly rates with a relatively large number of hours unless circumstances warrant it. A relatively high hourly rate is warranted when an attorney possesses knowledge and experience to work relatively quickly. *See Larsen v. Sec'y of Health & Human Servs.*, No. 19-56V, 2024 WL 5377991, at *2 (Fed. Cl. Spec. Mstr. Nov. 15, 2024) (finding that spending 66.2 hours attorney and paralegal hours drafting the pre-hearing brief, 19.2 hour drafting a GBS brief, and 69.8 hours on hearing preparation was excessive); *see also Barclay v. Sec'y of Health & Human Servs.*, No. 07-605V, 2014 WL 2925245, at *6 (Fed. Cl. Spec. Mstr. Feb. 7, 2014) (finding that spending approximately 80 hours in continued work on expert reports, approximately 44 hours in writing a pretrial brief, approximately 44 hours in preparing for and participating in the hearing, and approximately 55 hours for writing one post-hearing brief was not reasonable). Mr. Webb possesses more than 40 years of experience practicing law, with more than 35 of those years representing petitioners in the Vaccine Program (since the creation of the Program in 1988). Fees App. Att. C at 3. In my experience, the amount of time counsel billed for hearing preparation and brief writing was excessive. Additionally, counsel billed for excessive communication with his clients.[4,5] The record contains more 20 *excessive* communication entries billed by Mr. Webb totaling 10.6 hours ($5,475.60). *Id.* at Att. A at 3-17. While I acknowledge that client communication is an important aspect of representation, the *amount of time* counsel spent receiving and drafting emails to his clients is excessive and far exceeds what I normally see in billing records.

---

[4] For example, a non-exhaustive list of these entries includes: "Exchanged emails with Davis re: Entitlement Hearing, likely duration and availability of experts" for 1.1 hours on October 14, 2020; "Conferred with Cassandra [sic.] Rodela by phone: confirmed additional contact information; updated client on status of case;" for 1.2 hours, and "Left message on Mathew Rodela's phone" for 12 minutes, both on February 18, 2022." Fees App. Att. A at 3-4. On October 16, 2023, Mr. Webb billed four separate entries for six minutes each, for *receiving* one or two emails from Ms. Hogan. *Id.* at 19.

[5] This amount does not include *all* client communication billed by Mr. Webb, only communications that were deemed excessive.

Finally, there are other tasks billed that were just generally excessive. For example, Mr. Webb billed 4.4 hours ($2,120.80) to re-establish contact with his clients. *See* Fees App. Att. A at 3. Mr. Webb also billed between 12-18 minutes receiving non-PDF or one-page orders, or preparing basic documents like the Election to Receive Compensation. *See id.* at 3, 4, 14, 21. *Id.* at. Mr. Webb billed a total of 1.5 hours ($792.75) for these types of tasks.

A special master need not engage in a line-by-line analysis of a petitioner's fee application when reducing fees. *Broekelschen*, 102 Fed. Cl. at 729. It is "well within the special master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Saxton*, 3 F.3d at 1522. In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged so long as a "concise but clear" justification for the reduction is provided. *Abbott v. Sec'y of Health & Human Servs.*, 135 Fed. Cl. 107,111 (2017). Special masters need not explain how many hours are appropriate. *Raymo v. Sec'y of Health & Human Servs.*, 129 Fed. Cl. 691, 702 (2016). "It would be unreasonable, however, to expect the Special Master to explain how each individual entry affected [her] final calculation, as in conducting fee determinations tribunals 'need not, and indeed should not, become green-eyeshade accountants.'" *Abbott*, 135 Fed. Cl. at 112 (quoting *Fox*, 563 U.S. at 838).

Given the extreme excessive billing presented here, I find it necessary to reduce counsel's excessively billed entries (including time billed for excessive communication, drafting the pre-hearing brief and response, drafting the post-hearing brief and reply, and other generally excessive tasks noted above) by 50%. This results in a reduction of **$71,533.73**.

        ii.    *Paralegal Tasks*

Attorneys may be compensated for paralegal-level work, but at a rate that is comparable to what would be paid for a paralegal. *See, e.g. Doe/11 v. Sec'y of Health & Human Servs.*, No. XX-XXXV, 2010 WL 529425, at *9-10 (Fed. Cl. Spec. Mstr. Jan. 29, 2010) (citing *Missouri v. Jenkins*, 491 U.S. 274, 288 (1989)); *Mostovoy v. Sec'y of Health & Human Servs.*, No. 02-10V, 2016 WL 720969, at *5 (Fed. Cl. Spec. Mstr. Feb. 4, 2016); *Riggins v. Sec'y of Health & Human Servs.*, No. 99-382V, 2009 WL 3319818, at *20-21 (Fed. Cl. Spec. Mstr. June 15, 2009); *Turpin v. Sec'y of Health & Human Servs.*, No. 99-535, 2008 WL 5747914, at *5-7 (Fed. Cl. Spec. Mstr. Dec. 23, 2008). It appears that counsel performed a number of paralegal tasks but seeks attorney rates for them. Petitioners' counsel billed approximately 5.2 hours ($2,563.75) for paralegal tasks.[6] I find it reasonable to apply 50% reduction to these billing entries. This results in a reduction of **$1,281.88**.

---

[6] For example, a non-exhaustive list of these entries includes: "Prepared Motion for Extension VTC Forms" on May 3, 2022; "Sent emails to SM's clerks re: VTC Forms, format for hearing (WebEx?) and Received responses" and "Prepared VTC Forms" on May 4, 2022; "Prepared; Submitted VTC Forms" on May 9, 2022. *See* Fees App. Att. A at 9.

### iii.    *Administrative/Clerical Tasks*

It is well-established that billing for some administrative tasks (*e.g.*, filing), even at a paralegal rate, is not permitted in the Vaccine Program. *See, e.g., Rochester v. United States*, 18 Cl. Ct. 379, 387 (1989); *Arranga v. Sec'y of Health & Human. Servs.*, No. 02-1616V, 2018 WL 2224959, at *3 (Fed. Cl. Spec. Mstr. Apr. 12, 2018). Petitioners' counsel billed approximately 3.9 hours for non-compensable administrative tasks.[7] This results in a reduction of **$1,197.00**.

### iv.    *Travel*

Petitioners' counsel billed 39 hours (at one half his normal rate) for travel time related to the entitlement hearing that occurred from May 24, through May 26, 2022. Fees App. Att. A at 12-14. Specifically, Mr. Webb: flew from Portland, OR to Sacramento, CA; drove from Sacramento to Placerville, CA (to meet with expert, Dr. Robert Shuman); drove from Placerville back to Sacramento; flew from Sacramento to Orange County, CA to meet with petitioners (Mr. Rodela in Santa Ana and Ms. Hogan in Rancho Santa Margarita); flew from Orange County back to Sacramento; drove from Sacramento to Placerville (to attend the hearing remotely via video conferencing at Dr. Shuman's residence); drove from Placerville to Sacramento; and finally, took a train from Sacramento back to Portland. *See* Fees App. at 11; Att. A at 12-14; Att. B *generally.*  It is the petitioner's burden to demonstrate "that the hours claimed are reasonable" and that "proper documentation . . . has been submitted" to support the claim. *See Sabella,* 86 Fed. Cl. at 210 (citing *Hensley,* 461 U.S. at 433, 437); *see also Duncan ex rel. Duncan v. Sec'y of Dep't of Health & Human Servs .,* No. 99–455, 2008 WL 4743493, at *1 (Fed.Cl. Aug. 4, 2008).

I find that Mr. Webb's travel related to the entitlement hearing was an unnecessary and unreasonable expenditure of time. Although it may be routine for attorneys to have the opportunity to meet in person with their clients and witnesses prior to an in-person hearing, in this case the parties were advised: "Due to the current coronavirus pandemic, it is anticipated that all participants will appear individually via Cisco Webex. Each party is responsible for arranging their own access to whatever video conferencing equipment and services are necessary to successfully connect with the Court's system and fully participate in the proceedings. If this presents any problem for either party, they should request a status conference immediately." (ECF No. 87 at 1.)

Mr. Webb never raised in response to this order that he felt it would be necessary to use Program resources to travel to two different locations (Sacramento/Placerville and Southern California) to meet in-person with each witness prior to the hearing, or expressed any concern that the remote hearing format would impede his access to his witnesses. He asserts for the first time in his motion for attorneys' fees and costs that

---

[7] For example, a non-exhaustive list of these entries includes: "Sent Lisa Roquemore an email: logistics of hearing - client is in S. California" and "Prepared for hearing: travel arrangements and conferences with clients and experts" on May 3, 2022; "Travel arrangements" on May 6, 2022; "Filed M for Extension" on November 21, 2022. *See* Fees App. Att. A at 8, 9, 14.

this was reasonably necessary. Fees App. at 11. However, he does not explain why. Based on my own experience of the entitlement hearing, and even accounting for the overall complexity of the case and the use of video evidence during the hearing, I do not see how such in-person meetings were reasonably necessary. Moreover, by traveling to meet each witness in person, Mr. Webb undermined the very purpose of holding the hearing remotely, which was to further pandemic-related distancing precautions.

Mr. Webb's travel time alone accounts for $9,701.25 in fees, and as will be discussed later, $4,839.79 more in associated costs. "One test of the 'reasonableness' of a fee or cost is whether a hypothetical petitioner, who had to himself pay his attorney for Vaccine Act representation, would be willing to pay for such an expenditure." *King v. Sec'y of Health & Human Servs.*, No. 03-584, 2011 WL 592616, at *4 (Fed. Cl. Spec. Mstr. Sept. 22, 2011); *Riggins*, 2009 WL 3319818, at *3 (explaining that "[r]easonableness may be evaluated from a paying client's perspective."), *mot. rev. den'd* 106 Fed. Cl. 600 (2009), *aff'd* 406 Fed. Appx. 479 (Fed. Cir. 2011). Given the circumstances of this case, I do not believe Mr. Webb's travel would pass this test. Accordingly, I will not permit any of the requested travel costs. This results in a reduction of **$9,701.25**.

Petitioner is therefore awarded final attorneys' fees of **$199,523.05**.

### c. Attorneys' Costs

Like attorneys' fees, a request for reimbursement of attorneys' costs must be reasonable. *Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (Fed. Cl. 1992). Petitioner requests a total of $188,709.29 in attorneys' costs. Fees App. at 1-2. These costs are comprised of estate costs ($20,400.00); transcript of the entitlement hearing ($1,865.50); Ms. Hogan's hotel costs related to the entitlement hearing ($553.89); entitlement hearing travel-related costs incurred by Mr. Webb ($4,285.90), and expert services provided by Dr. Marcel Kinsbourne ($16,400.00) and Dr. Robert Shuman ($145,204.00). *See id.*; Fees App. Att. B.

First, Petitioners explain that they are unable to provide records for Dr. Kinsbourne's time because he passed away in 2024. Fees App. at 8. Petitioners request that 32.8 hours be awarded for Dr. Kinsbourne's work – allocating 13.8 hours preparing for the entitlement hearing and 19 hours participating in the three-day hearing – billed at $500.00 per hour. *Id.* Although there is no invoice for Dr. Kinsbourne's services, I nevertheless find that this rate is consistent with what Dr. Kinsbourne has been previously awarded and is also reasonable herein. *See, e.g., Nieves v. Sec'y of Health & Human Servs.*, No. 18-1602V, 2023 WL 7131801, at *5 (Fed. Cl. Spec. Mstr. Oct. 2, 2023). Moreover, the number of hours requested for Dr. Kinsbourne's expert services are also reasonable; therefore, his services shall be awarded in full.

Petitioners' second expert, Dr. Shuman, billed 363.01 hours at a rate of $400.00 per hour for a total of $145,204.00 for time spent preparing for and testifying at the

7

entitlement hearing. Fees App. Ex. D at 2-4. I find Dr. Shuman's hourly rate reasonable and consistent with what Dr. Shuman has previously been awarded in other Vaccine Program cases. *See, e.g., Mullins on behalf of K.M. v. Sec'y of Health & Human Servs.*, No. 19-320V, 2023 WL 3051273, at *3 (Fed. Cl. Spec. Mstr. Apr. 24, 2023); *Scheyder ex rel. J.H.S. v. Sec'y of Health & Human Servs.*, No. 19-580V, 2022 WL 905894, at *3 (Fed. Cl. Spec. Mstr. Feb. 24, 2022). However, I find a reduction necessary due to the excessive amount of time billed, vague entries, and block billing.

Petitioners concede that "Dr. Shuman has billed a large number of hours for his participation in the hearing;" however, they argue that "[h]is hours are, nevertheless, reasonable." Fees App. at 10. Dr. Shuman previously billed 181.8 hours in this case for producing two expert reports and was awarded $72,943.75 in fees. (ECF No. 77 at 5.) In this second invoice, all the hours that were billed were related to preparing for and testifying at the entitlement hearing between April 1, 2022, and May 26, 2022, approximately eight weeks. Fees App Att. D at 2. Thus, to the extent I am able to interpret Dr. Shuman's vague billing, all of his preparations (which average seven hours per day, every day during that time period) involved reviewing medical literature, meeting with petitioners' counsel, preparing for direct and cross examination and testifying at the hearing. *Id.* at 2-4. Moreover, Dr. Shuman billed between 2.00 and 14.25 hours for each single entry, and he also billed for administrative tasks. *See id.* For example, on May 23, 2022, Dr. Shuman billed the following: "05/23/22 (0700-1000)+(1230-1900)+(1900-2100 Q&A; twin CPU/Webex setup 12.00h." *Id.* at 4. It appears that Dr. Shuman billed 12 hours for preparing his testimony and setting up technology for the hearing. Due to the vagueness and lumped nature of this entry, I am unable to determine how much of this time was spent preparing his testimony and how time was spent setting up technology, the latter of which is a non-compensable administrative task.

It is well established that block-billing or billing large amounts of time without sufficient detail as to what tasks were performed, is clearly disfavored in the Program. See *Broekelschen v. Sec'y of Health & Human Servs.*, 07-137V, 2008 WL 5456319, at *4 (Fed. Cl. Spec. Mstr. Dec. 17, 2008). Ultimately, several tasks lumped together with one-time entry frustrates the court's ability to assess the reasonableness of the request. Additionally, the Vaccine Program's Guidelines for Practice state, "[e]ach task should have its own line entry indicating the amount of time spent on that task." [8]

These issues are not new to Dr. Shuman. In fact, in the interim fees decision I cautioned Dr. Shuman against block billing in this case, and other special master have previously found his billing hours and entries to be excessive, vague, and constitute block billing. *See* ECF No. 77 at 5, n.5. *See also, e.g., Mullins*, 2023 WL 2234265, at *3-4 (finding it reasonable and necessary to reduce Dr. Shuman's bill of 583.27 hours by 40% "[d]ue to the extreme nature of the amount of excessive billing, vague entries, block billing, and the fact that Dr. Shuman has repeatedly submitted bills with the same problems," noting that he had been previously put on notice of these problems); *Sims ex*

---

[8] The Guidelines for Practice can be found at the link below. Please refer to page 76: https://www.uscfc.uscourts.gov/guidelines-practice-under-national-vaccine-injury-compensation-program

*rel. A.E.S. v. Sec'y of Health & Human Servs.*, No. 15-1526V, 2023 WL 2234265, at *5-8 (Fed. Cl. Spec. Mstr. Feb. 27, 2023) (finding it was "unreasonable and unnecessary" for Dr. Shuman to bill 785 hours, including "an extraordinary amount of time" completing tasks such as reviewing medical literature, and reducing his hours by 40%); *Sharpe*, 2018 WL 3990867, *3 (finding Dr. Shuman billed hours to be "undoubtedly [ ] large" and reducing his award for entries that were "impermissibly vague and thus constitute block billing"); *Loving v. Sec'y of Health & Human Servs.*, No. 02-469V, 2015 WL 10579257, at *13-16 (Fed. Cl. Spec. Mstr. Dec. 15, 2015) (reducing Dr. Shuman's fee by one-third for poor item descriptions, redundant research work, and administrative tasks); *Scheyder*, 2022 WL 905894, at *3. For similar reasons, I find a reduction of 50% to Dr. Shuman's overall invoice reasonable and necessary. This results in a reduction of **$72,602.00**.

Finally, I find it necessary to reduce the costs attributable to Mr. Webb's travel for the entitlement hearing, which were previously found to be unreasonable. These travel expenses are comprised of Mr. Webb's airfare, train, lodging, meals, car rentals, gas, and parking, and will not be reimbursed. I will, however, reimburse the cost of Ms. Hogan's hotel room based on the uncontested representation that this was necessary for Ms. Hogan's internet access, which is consistent with the pre-hearing order's instruction that each party is responsible for arranging access to the services need to participate in the remote hearing. *See* ECF No. 87. The total reduction attributable to these travel expenses is **$4,285.90**.

I find that the remaining costs have been supported with sufficient documentation and are reasonable. Petitioner is therefore awarded **$111,821.39** in attorneys' costs.

## II.    Conclusion

In accordance with the Vaccine Act, 42 U.S.C. § 300aa-15(e) (2012), I have reviewed the billing records and costs in this case and find that petitioners' motion for attorneys' fees and costs is **GRANTED IN PART**. I find it reasonable to compensate petitioners and their counsel as follows:

| | |
|---|---|
| Attorneys' Fees Requested | $283,966.90 |
| (Reduction of Fees) | ($84,443.85) |
| **Total Attorneys' Fees Awarded** | **$199,523.05** |
| | |
| Attorneys' Costs Requested | $188,709.29 |
| (Reduction of Costs) | ($76,887.90) |
| **Total Attorneys' Costs Awarded** | **$111,821.39** |
| | |
| **Total Attorneys' Fees and Costs** | **$311,344.44** |

**Accordingly, I award a lump sum in the amount of $311,344.44, representing reimbursement for petitioners' attorneys' fees and costs, to be paid through an ACH deposit to petitioners' counsel's IOLTA account for prompt disbursement.**

9

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court shall enter judgment in accordance herewith.[9]

**IT IS SO ORDERED.**

<u>**s/Daniel T. Horner**</u>
Daniel T. Horner
Special Master

---

[9] Entry of judgment can be expedited by each party's filing of a notice renouncing the right to seek review. Vaccine Rule 11(a).